IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **MEAGAN RENEE BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:16-cv-01342** |
| | ) | **Judge Aleta A. Trauger** |
| **CITY OF FRANKLIN** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Before the court are two Motions to Dismiss: the first filed by defendants Jeff Long and Williamson County (Doc. No. 20) and the second, by the City of Franklin, Deborah Faulkner, Samantha Brooks, Jeff Carson, Chris Harris, Cory Kroger, Scott Legieza, Jeff Rowe, Craig Wright, and Don Zelaya (Doc. No. 22).

The motions have been fully briefed by both parties and are ripe for review. For the reasons set forth herein, the court will grant both motions.

## I.    Background and Procedural History

For purposes of reviewing the defendants' motions, the court accepts as true the factual allegations in the Complaint, summarized here in relevant part.

Plaintiff Meagan Renee Brown is a resident and citizen of Williamson County, Tennessee. Defendants Brooks, Harris, Kroger, Legieza, Rowe, Wright, and Zelaya (the "Franklin police officer defendants") are police officers employed by the City of Franklin, Tennessee. Faulkner is Chief of Police of the Franklin Police Department and, as such, responsible for the supervision and training of Franklin police officers as well as for formulating and implementing policies and practices employed by Franklin police officers.

Jeff Long is Sheriff of Williamson County. The City of Franklin and Williamson County are political subdivisions of the State of Tennessee.

Brown alleges that, on June 8, 2015, the Franklin police officer defendants knowingly presented false evidence to the Williamson County Grand Jury that resulted in the wrongful indictment of Brown. As a consequence of the indictment, on June 11, 2015, the Williamson County courts issued a capias warrant naming Brown and setting bail at $50,000. On June 12, 2015, while Brown was returning home from a trip to the grocery store, she was the passenger in a vehicle pulled over by an unidentified police officer in Fairview, Tennessee. The unidentified Franklin police officer ran the identities of the driver and Brown and discovered the active warrant for Brown. The officer arrested Brown and transported her to the Williamson County jail.

Although she references it in her Complaint, the plaintiff did not include a copy of the capias warrant with her pleading. Williamson County and Jeff Long, however, filed a verified copy of it along with their Motion to Dismiss. (*See* Doc. No. 21-1.) This document, titled "Grand Jury Capias," directs the Sheriff of Williamson County to take "Megan Renee Brown" into custody and to present her before the Judge of the Circuit Court for Williamson County, Tennessee on June 29, 2015, to answer to charges specified in the warrant. The document reflects that "Judge Johnson" set the bond in the amount of $50,000. (*Id.*)

According to the Complaint, Brown appeared for her arraignment on June 29, 2015, at which time she was appointed counsel and pleaded not guilty. She remained in custody from June 12, 2015 through September 11, 2015, when, at her first opportunity for bond review, she was released on her own recognizance. On October 9, 2015, Assistant District Attorney General Sean Duddy dismissed all charges against Brown.

Brown alleges that the defendants' wrongful and illegal actions caused her to suffer severe mental and physical pain, to lose her residence and personal belongings, and to lose access to three of her minor children, custody of whom she was in the process of regaining at the time of her wrongful indictment and arrest.

Brown filed her Complaint on June 13, 2016, asserting claims under 42 U.S.C. § 1983 and Tennessee law as follows:

In Count I, Brown asserts a claim under § 1983 against all defendants for the knowing presentation of false evidence to a grand jury and for seeking a warrant without probable cause, in violation of the plaintiff's rights protected by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, including the rights to be free from unreasonable searches and seizures, the right not to be deprived of liberty without due process of law, the right not to be deprived of property without due process of law, the right to be free from false arrest, the right to just compensation for the taking of property, and the right to be free from excessive bail. Count I appears essentially to summarize or incorporate the claims set forth in all of the other counts.

Count II asserts a claim under § 1983 against Deborah Faulkner and the City of Franklin based on their having "adopted and implemented a careless and reckless policy, custom, or practice of allowing employees of the Franklin Police Department to present false information to the Williamson County Grand Jury" (Compl. ¶ 43) and for having failed to adequately train the Franklin police officer defendants, which the plaintiff alleges amounted to deliberate indifference to Brown's right to be free from unconstitutional seizures.

Count III is a § 1983 claim against Defendants Wright, Brooks, Kroger, Carson, Legieza, Rowe, Zelaya, and Harris for "committing acts under color of state law leading to

the false arrest and detention of Plaintiff," in violation of her rights under the Fourth, Fifth, and Fourteenth Amendments. (Doc. No. 1, at 49.)

Count IV purports to state a § 1983 claim against all defendants on the basis that the false arrest and false imprisonment proximately caused Brown to lose her apartment and all her belongings, which amounted to a deprivation of property in violation of the Fifth and Fourteenth Amendments.

There is no Count V. In Counts VI, VII, VIII, IX, and X, Brown asserts claims against all defendants under state common law and the Tennessee Governmental Tort Liability Act ("TGTLA") for false imprisonment, negligence, negligent supervision (against Faulkner only), conspiracy, and conversion. (Compl. ¶¶ 37–75.)

The defendants all filed Answers denying liability before filing their Motions to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiff thereafter filed a Motion to Strike Defendants' Unlawful Motions to Dismiss (Doc. No. 26), arguing that the motions were improperly filed under Rule 12(b)(6), which clearly governs pre-answer motions. The court denied the Motion to Strike (Doc. No. 32) and indicated that it would construe the filings as motions for judgment on the pleadings under Rule 12(c), subject to the same standard of review as that applied to Rule 12(b)(6) motions. The plaintiff was directed to respond to the Motions to Dismiss no later than September 16, 2016. After an extension of that deadline, the plaintiff has now responded to both motions.

## II.    Legal Standard

A motion under Rule 12(b) "must be made before pleading if a responsive pleading is allowed." Conversely, Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for

judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions are evaluated under the same standard of review. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

For both, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" but, instead, must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## III.    Motion to Dismiss Filed by Sheriff Jeff Long and Williamson County

In her response to the Williamson County defendants' motion, the plaintiff does not

address its substantive arguments. Instead, she moves the court to vacate the Order denying her Motion to Strike, which the plaintiff characterizes as the "requiring conversion [of the defendants' motion] from a 12(b)(6) motion to dismiss to a 12(c) motion for judgment on the pleadings." (Doc. No. 33, at 1.) The plaintiff argues that: (1) the court exceeded its authority under the Federal Rules of Civil Procedure in "converting" the Williamson County defendants' Rule 12(b)(6) motion into a Rule 12(c) motion (Doc. No. 33, at 1–2); (2) construed under Rule 12(c), the motion is premature because the confidential informant defendant has not filed an answer, so the pleadings are not "closed" as required by Rule 12(c) (*id.* at 2); and (3) even assuming the court "properly converted an untimely Rule 12(b)(6) motion into a Rule 12(c) motion," the court is now obligated to convert the motion into one for summary judgment under Rule 56, because the defendants "attached to their motion the critical summary judgment evidence, the smoking gun defense," that is, the certified copy of the capias warrant, and the "court does not have a basis to exclude it from evidence" (*id.*). The plaintiff did not any of the substantive arguments asserted in the Williamson County defendants' motion.

### A.     Construing the Rule 12 Motion

In moving to vacate the Order denying her Motion to Strike, the plaintiff continues to argue that this court does not have the authority to construe the Williamson County defendants' motion as one filed under Rule 12(c), because it was filed after the defendants' Answer. The plaintiff is simply incorrect in that regard, as the Sixth Circuit has long held that mislabeling a Rule 12(b) motion is a "technical error" that has "no impact" on the court's review, since a Rule 12(b) motion and a Rule 12(c) motion are subject to the same standard of review. *See, e.g.*, *Satkowiak v. Bay Cnty. Sheriff's Dep't*, 47 F. App'x 376, 377 n.1 (6th

Cir. 2002).

The plaintiff further argues, now, that the motion is not properly construed under Rule 12(c) either, because it was filed before the pleadings closed, since one defendant (a confidential informant) still has not been identified or served.

The plaintiff is technically correct that the motion is both late, because filed post-answer, and premature, because filed before the pleadings closed. Regardless of how it is labeled, however, the court retains the authority to consider it and to apply the same standard of review. As another district court within this Circuit explained recently:

> Plaintiffs are correct that the Individual Defendants are not technically in a position to bring either a Rule 12(b)(6) or a Rule 12(c) motion. A Rule 12(b)(6) motion "must be made before pleading," Fed. R. Civ. P. 12(b), and the Individual Defendants had already filed their answer before they filed their motion. The Individual Defendants' Rule 12(c) motion, on the other hand, is premature. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c); *see also F.R.C. Int'l, Inc. v. United States*, 278 F.3d 641, 642 (6th Cir. 2002) ("Although the parties refer to the judgment as a judgment on the pleadings under Fed. R. Civ. P. 12(c), judgment under that rule was technically unavailable because the government had not filed an answer and thus the pleadings were not closed as required by the rule."). The pleadings in this case are not closed because [one defendant] has not filed an answer.
>
> It appears, however, that district courts in this circuit have permitted parties to file post-answer Rule 12(b)(6) motions. Other courts have agreed to construe a premature Rule 12(c) motion as a Rule 12(b)(6) motion only on grounds that have been raised in their answer.

*Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623, 628 (W.D. Mich. 2015) (some citations omitted).

In this case, construing the Williamson County defendants' motion as a post-answer Rule 12(b)(6) motion is appropriate. These defendants raised each of the issues presented in their Motion to Dismiss as affirmative defenses in their Answer (Doc. No. 7), thus preserving

them. The plaintiff has not identified any possible prejudice that might arise from consideration of the Motion to Dismiss at this time. Accordingly, the Court will consider the motion as a post-answer Rule 12(b)(6) motion and will deny the plaintiff's request to vacate the Order denying her Motion to Strike.

### B.     The Effect of the Defendants' Filing a Copy of the Capias Warrant

Rule 12(d) provides that, "[i]f, on a motion under Rule 12(b)(6) or Rule 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The Sixth Circuit has nonetheless made it clear that, under certain circumstances, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 513 (6th Cir. 1999) (citing 11 James Wm. Moore et al., Moore's Federal Practice § 56.30[4] (3d ed. 1998)). One such circumstance is when "a document is referred to in the complaint and is central to the plaintiff's claim." *Id.* (citation omitted). In that event, "the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Id.*; *see also DVI Invs., LLC v. Blavin*, 617 F. App'x 374, 375 (6th Cir. 2015) (in ruling on a motion to dismiss, noting that it drew the facts from the complaint and, "consistent with [Sixth Circuit] precedent," also drew from "certain documents referenced and quoted in the complaint and central to Plaintiff's claim" (citing *Greenberg*, 177 F.3d at 514)).

In this case, the plaintiff alleges: "On or about June 11, 2015 a Capias warrant from the WILLIAMSON COUNTY courts was issued naming Ms. Brown and bail was set at $50,000." (Compl. ¶ 23.) This allegation is central to her claims that she was arrested after

the police officer defendants presented untruthful testimony to the Williamson County Grand Jury that resulted in her being wrongfully arrested and held on excessive bail. Because it was referenced in the Complaint and is central to her claims, the court may consider the authenticated copy of the capias warrant submitted by the Williamson County defendants without converting the defendants' Motion to Dismiss into a Rule 56 motion. Moreover, the capias warrant itself does not add any substantive information to the plaintiff's allegations—or conflict with them—and the plaintiff has not indicated in what way she is prejudiced by its introduction or the court's consideration of the document. The court therefore denies the request to convert the Rule 12 motion into a Rule 56 motion.

> **C.**     **The Williamson County Defendants' Motion to Dismiss**

The plaintiff has not responded to the Williamson County defendants' substantive arguments in support of dismissal of all claims against them. The court construes the failure to respond to the defendants' arguments as a waiver of whatever responsive arguments the plaintiff might have had. *Cf. Humphrey v. U.S. Att'y Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) ("[W]here, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived." (citing *Scott v. Tennessee*, No. 88-6095, 1989 WL 72470, at *2 (6th Cir. July 3, 1989) (affirming district court's grant of defendants' unopposed motion to dismiss and noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion")). *See also* M.D. Tenn. Local Rule 7.01(b) ("Failure to file a timely response shall indicate that there is no opposition to the motion."). Even considered on the merits, however, the Williamson County defendants' motion should be granted.

*(1)    Federal Claims*

First, insofar as the plaintiff might have intended to state individual capacity claims against Sheriff Long under § 1983, she fails to do so. The Complaint does not include any factual allegations showing that Long himself took or failed to take any action that gave rise to the plaintiff's claims or that he was even contemporaneously aware of the events that allegedly caused the plaintiff's injuries. Long's name is not mentioned anywhere in the Complaint other than the case caption and paragraphs 17 and 18, where he is identified as the Sheriff of Williamson County with responsibility for "establishing and implementing policies, practices, procedures, and customs used for the detention of inmates in Williamson County regarding bond and the incarceration of the accused." (Compl. ¶ 18.) While such allegations might be relevant, as discussed below, to a claim against Long in his official capacity or against Williamson County as a municipality under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), they do not suggest that Long personally engaged in unconstitutional behavior. *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."); *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." (emphasis in original)). The Complaint, in short, fails to state an individual-capacity claim against Long under § 1983.

Asserting claims against Long in his official capacity is the same as asserting claims directly against Williamson County. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (suing a

government employee in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent"). Liberally construed, the Complaint attempts to state a claim against Williamson County for having policies or customs that led to the setting of excessive bail and the plaintiff's false imprisonment.

In *Monell*, the Supreme Court held that a municipal entity is a "person" that can be sued directly under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690. A municipality cannot be held liable under § 1983 on a *respondeat superior* basis. *Thomas v. City of Chattanooga*, 398 F.3d 426, 432–33 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 694). Thus, Williamson County "may only be sued under § 1983 for unconstitutional or illegal municipal policies, and not for unconstitutional conduct of [its] employees." *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 819 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 691). To succeed on a municipal liability claim, a plaintiff must establish that her constitutional rights were violated and that a policy or custom of the municipality was the "moving force" behind the deprivation of her rights. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010) (citing *Monell*, 436 U.S. at 694 (internal citation omitted)). Thus, to state a claim against a municipality, a plaintiff must "identify the policy, connect the policy to the [municipality] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citations omitted).

In this case, the only allegations linking Williamson County to the setting of the plaintiff's bail are the assertions that "Williamson County is responsible for the training and supervision of Defendant Sheriff Long," that it "established or delegated to Defendant

LONG the responsibility for establishing and implementing policies, practices, procedures, and customs used for the detention of inmates in Williamson County regarding bond and the incarceration of the accused," that the Williamson County courts issued a capias warrant naming Brown and setting bail at $50,000, and that the plaintiff was transported to the Williamson County jail after her arrest. (Compl. ¶¶ 18, 23, 27.)

As indicated above, a municipality cannot be held responsible for an alleged constitutional deprivation unless there is a direct causal link between a policy or custom of the municipality and the alleged constitutional violation related to the setting of bail. *Monell*, 436 U.S. 658, 694. The plaintiff here has not identified a policy or custom or shown how such custom or policy led to any constitutional violation. The mere possibility of a constitutional violation is not sufficient. *See Patterson v. Novartis Pharm. Corp.*, 451 F. App'x 495, 497 (6th Cir. 2011) ("The plausibility pleading standard set forth in *Twombly* and *Iqbal* requires that [the plaintiff plead] enough facts to state a claim for relief that is plausible on its face. A complaint that allows the court to infer only a 'mere possibility of misconduct,' is insufficient to 'show' that the complainant is entitled to relief and fails to meet the pleading requirements of Rule 8." (quoting *Iqbal*, 556 U.S. at 679)). Thus, while it is possible that Williamson County might be responsible for the setting of bail, *cf.*, *Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 183 (6th Cir. 2012) (where the defendant county did not dispute that it set bail for detainees by employing a bond schedule), the plaintiff has not alleged facts allowing the court to draw the conclusion that Williamson County actually set her bail/bond in this case.

Nor has she alleged the existence of specific policies or customs governing the county's decision-making process—if in fact it makes those decisions—or indicated how

whatever policy is used for the setting of bail violated her rights. Instead, she alleges only that the Williamson County court issued the capias warrant and "bail was set at $50,000." (Compl. ¶ 23.) She later states that bail was excessive. However, the mere fact that bail was set at a certain level, apparently by the Williamson County court or a judge on that court,[1] does not support a claim that the bail set in her case was "grossly disproportionate" to the charged crimes, *see United States v. Bajakajian*, 524 U.S. 321, 334 (1998) (defining "excessive" for purposes of the Excessive Fines Clause), or that the process for setting bail was improper or violated Tennessee law. *See United States v. Salerno*, 481 U.S. 739, 753–54 (1987) (holding that the test for excessiveness is whether the terms of release are designed to ensure a compelling government interest); *Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 184 (6th Cir. 2012) ("[T]he Eighth Amendment mandates that when bail is granted, it may not be unreasonably high in light of the government's purpose for imposing bail.").[2]

Likewise, the Complaint does not allege facts showing that any policy implemented or enforced by Williamson County renders the county liable for false imprisonment. The Supreme Court defines false imprisonment as detention without due process. *Wallace v. Kato*, 549 U.S. 384, 389 (2007). A false imprisonment therefore ends when an individual becomes held pursuant to legal process. *Id.* The Sixth Circuit has held that a pre-arrest

---

[1] It appears to be undecided in Tennessee whether municipal courts are arms of the state, and as such entitled to sovereign immunity, or arms of the county, which are not. This court declines to undertake an analysis of that issue without input from the parties. For purposes of this opinion, the court assumes without deciding that the county court is an extension of the county.

[2] While the Supreme Court has never explicitly found the Fourteenth Amendment to incorporate this prohibition against the states, it has assumed incorporation, *Schilb v. Kuebel*, 404 U.S. 357, 365 (1971), and the Sixth Circuit has followed suit. *Fields*, 701 F.3d at 183 n.4 ("Like the Supreme Court, we assume without deciding that the [Excessive Bail] Clause is incorporated against the states.").

"indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 307 n.13 (6th Cir. 2005) (citing *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)). Moreover, "[a]n arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citing *Baker v. McCollan*, 443 U.S. 137, 143–44 (1979)).

In this case, according to her own allegations, the plaintiff was incarcerated at the Williamson County jail pursuant to, and in accordance with, legal process: she was arrested on June 12, 2015 pursuant to a state grand jury capias warrant and subsequently held at the Williamson County jail pursuant to that warrant. (Compl. ¶¶ 23, 26, 27.) On September 11, 2015, following the issuance of a court order, the plaintiff was released on her own recognizance. (Compl. ¶ 30.) While the Complaint alleges insufficiencies in the process of obtaining a grand jury indictment in the first place, the allegations do not suggest that the capias warrant was defective on its face or that Long or any person employed by Williamson County had any reason to know that the capias warrant was defective. In short, the allegations in the Complaint indicate that Williamson County had no reason to suspect that the process accorded the plaintiff had been insufficient in any way.

The court therefore finds that the Complaint fails to state a colorable claim under § 1983 for excessive bail or false imprisonment against Jeff Long in his individual or official capacity or against Williamson County. The Williamson County defendants' motion to dismiss the § 1983 claims against them will therefore be granted.

### *(2)    State Law Claims*

It is unclear whether the plaintiff intended to assert state law claims against the Williamson County defendants, but she asserts generally that "Defendants" breached a duty of care owed to the plaintiff by intentionally or negligently "restraining or detaining [her] without just cause" and are therefore liable for false imprisonment and negligence. (Compl. Counts VI & VII, at ¶¶ 56, 63.) She also alleges conspiracy and conversion against all the defendants. (Compl. Counts IX & X.)

Assuming that the plaintiff is attempting to assert a state law false imprisonment claim against Sheriff Long in his individual capacity, whether intentional or negligent, the plaintiff also clearly alleges that she was incarcerated pursuant to a facially valid capias warrant. Under state law, even if the plaintiff had alleged facts showing Long had any personal involvement in her alleged false imprisonment, Long is entitled to qualified immunity if he had reasonable grounds to incarcerate the plaintiff pursuant to a facially valid capias. *See, e.g.*, *Luna v. White Cnty.*, No. M2014-02111-COA-R3-CV, 2015 WL4119766, at *4 (Tenn. Ct. App. June 29, 2015) (finding that a county sheriff was entitled to qualified immunity against a claim of false imprisonment where plaintiff was incarcerated pursuant to a "facially valid bench warrant"). And since Long is immune, there is no liability to be imputed to the county under Tenn. Code Ann. § 8-8-302. *Id.* at *6 n.10.

Regarding the other claims, the Complaint does not allege sufficient facts from which to infer that Long or Williamson County had any involvement in the challenged actions. Again, because the plaintiff did not contest the Motion to Dismiss on substantive grounds and because the Complaint fails to state a colorable claim, the state law claims against Long and Williamson County will be dismissed as well.

**IV.    The Franklin Defendants' Motion to Dismiss**

In their Motion to Dismiss, the Franklin defendants argue that: (1) the Franklin police officer defendants are absolutely immune from liability resulting from their Grand Jury testimony; (2) the Complaint fails to state a claim under § 1983 for violation of the Fourth, Fifth, Eighth or Fourteenth Amendments to the United States Constitution; (3) the Complaint fails to state a claim based on a failure to implement appropriate policies, customs or practices for purposes of a municipal liability claim against the City of Franklin; (4) the official capacity claims against Faulkner should be dismissed because they are equivalent to claims against the City; (5) the Complaint does not allege facts supporting a claim of negligence or negligent supervision; (6) the Complaint does not allege facts sufficient to support the existence of a conspiracy; (7) punitive damages are not available under 42 U.S.C. § 1983 or the TGTLA; and (8) any remaining claims should be dismissed as insufficiently pleaded. In response, the plaintiff incorporates by reference the procedural objections she made in response to the Williamson County defendants' motion, but she also attempts to address the Franklin defendants' substantive arguments.

As set forth above, the court rejects the plaintiff's contention that the parties' motions should be stricken as improperly filed. These defendants raised each of the issues presented in their Motion to Dismiss as affirmative defenses in their Answers (Doc. Nos. 8–17), thus preserving them. The court addresses the parties' substantive arguments below and finds that the Complaint fails to state a claim for which relief may be granted.

**A.    Absolute Immunity for Grand Jury Testimony**

The plaintiff alleges that "Defendants of the Franklin Police Department," acting under color of law, knowingly and intentionally presented false evidence to a grand jury

based solely on the word of Confidential Informant #14-18, a known criminal, and thereby obtained a warrant for the plaintiff's arrest without probable cause. (Compl. ¶¶ 19, 22, 39.) The Supreme Court has repeatedly made it clear that all grand jury witnesses, even police officers, enjoy absolute immunity from any § 1983 claim based on the witnesses' grand jury testimony. *See, e.g.*, *Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012). "[T]his rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Id.* Otherwise, "a criminal defendant turned civil plaintiff could simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves." *Id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 283 (1993) (Kennedy, J., concurring in part and dissenting in part).

The plaintiff attempts to avoid this rule by arguing that "the gathering, procuring and testifying to false evidence is more than enough to impute liability." (Doc. No. 38, at 3.) That assertion is simply false under *Rehberg*. The plaintiff also insists that there is no immunity for "law enforcement officials who falsify affidavits . . . and fabricate evidence concerning an unsolved crime." (*Id.* (quoting *Rehberg*, 132 S. Ct. at 1507 n.1).) While the Supreme Court did reach that conclusion, the Complaint contains no allegations regarding the falsification of affidavits or fabrication of evidence. Instead, as indicated above, the plaintiff alleges only that the police officer defendants knowingly presented false evidence to a grand jury. Finally, the plaintiff posits that the "breadth" of the defendants' wrongdoing will be disclosed once discovery begins. (*Id.*) Unless the Complaint states a colorable claim to begin with, the plaintiff will not be entitled to move on to the discovery process. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 . . . does not unlock the doors of discovery for

a plaintiff armed with nothing more than conclusions.").

In short, the Franklin defendants are absolutely immune from liability under § 1983 for claims based on the allegation that they gave false grand jury testimony.

**B.     Section 1983 Claims for Violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments**

The Franklin defendants argue that the conclusory allegations in the Complaint are insufficiently specific to state claims based on violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments. In response, the plaintiff argues only that she properly alleges that she was incarcerated by the defendants, who were acting under color of state law; that she was innocent; and that she lost everything, including her children, as a result of the defendants' actions. She insists that discovery will show that the police officers acted in concert and with deliberate indifference to the violation of her rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. In addition, officials undertaking to procure a warrant must have "probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* The Sixth Circuit has recently analyzed the interplay between the "Reasonableness Clause" and the "Warrant Clause" of the Fourth Amendment and concluded that simply showing that an arrest warrant is not supported by "sufficient information to support an independent probable cause judgment" does not state a violation of the Fourth Amendment. *Graves v. Mahoning Cnty.*, 821 F.3d 772, 775 (6th Cir. 2016). Rather, "[t]o establish a cognizable Fourth Amendment claim, the plaintiffs must show a violation not of the Warrant Clause but of the *Reasonableness Clause*." *Id.* (emphasis in original). Thus, the plaintiffs could not prevail by showing that they were arrested pursuant to

a defective warrant; they had to show that they were unreasonably seized, that is, that reliance on the defective warrant was unreasonable. *Id.* The court also reiterated that the general rule is that, "[e]ven when the arrest warrant is invalid, probable cause is sufficient to justify arrest." *Id.* (internal quotation marks and citations omitted).

Here, as in *Graves*, the plaintiff alleges that the indictment was invalid because it was procured with false testimony and, therefore, that the capias warrant was invalid because it was supported only by the Franklin police officers' false testimony. But she does not allege that the arresting officer knew about the false testimony or lacked probable cause for the actual arrest. The arresting officer, as previously indicated, is not even named as a defendant. Because the plaintiff fails to allege facts suggesting that her actual arrest was without probable cause, the Complaint fails to state a claim under § 1983 based on violation of the Fourth Amendment.

The Fifth Amendment very broadly requires an indictment for people charged with a federal crime, except under certain circumstances; prohibits double jeopardy; and protects individuals from compelled self-incrimination, from the deprivation of life, liberty or property without due process of law, and from the taking of private property for public use without just compensation. U.S. Const. amend. V. The due-process clause of the Fifth Amendment does not apply to state actors. *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000). The takings clause does, *see, e.g.*, *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Protection*, 560 U.S. 702 715 (2010), but the plaintiff has not adequately explained how her rights under the takings clause of the Fifth Amendment have been violated. Although she claims to have "lost" everything as a result of her detention, she has not alleged facts suggesting the taking of any of her property by any defendant or other state

actor.

The Eighth Amendment, among other things, protects against excessive bail and excessive fines. While the plaintiff asserts a "loss of freedom from excessive bail," simply asserting that she was held on excessive bail is not sufficient to state a claim for violation of her right to be free from excessive bail. She does not specifically allege who set bail or how, or why the amount of bail was excessive. As previously stated, she does not allege facts suggesting that the bail set in her case was "grossly disproportionate" to the charged crimes. *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). Nor does she challenge the process for setting bail. *See United States v. Salerno*, 481 U.S. 739, 753–54 (1987) (holding that the test for excessiveness is whether the terms of release are designed to ensure a compelling government interest). The plaintiff fails to state a colorable claim against any of the named defendants based on a violation of her right to be free from excessive bail.

The Complaint fails to state a claim for violation of the Fourteenth Amendment against the Franklin police officer defendants in their individual capacity. The only factual allegation directed toward Franklin police officers in their individual capacity is that they knowingly presented false evidence to a grand jury. As set forth above, they are immune from liability for that conduct. Insofar as the plaintiff attempts to assert a claim against the individuals for false arrest, she fails to do so, because the officers are not alleged to have been involved in the plaintiff's arrest. Likewise, she has not shown that any police officer was involved in the plaintiff's alleged loss of her apartment and personal belongings. The plaintiff asserts that the loss of custody of her children is a consequence of the allegedly wrongful arrest, but she must first establish liability in order to recover damages associated with that loss.

Finally, any § 1983 claims against Deborah Faulkner in her official capacity as Chief of the Franklin Police Department are equivalent to, and effectively the same as, the claims against the City of Franklin. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Under *Monell*, as discussed above, a municipal entity may be liable under § 1983 only if a municipal "policy or custom" caused a plaintiff to be deprived of a federal right. 436 U.S. at 694. A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. The Sixth Circuit has recognized that a plaintiff can establish municipal liability under *Monell* by demonstrating one of the following:

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

The plaintiff here does not identify which of these theories of recovery she is pursuing. She simply asserts that the City of Franklin is responsible for the training and supervision of the Franklin police officers and that the city has delegated to Faulkner, as Chief of Police, the "responsibility for establishing and implementing policies, practices, procedures, and customs used by law enforcement officers employed by City of Franklin regarding arrests and necessary facts for presentation to a Grand Jury." (Compl. ¶ 16.) She alleges very broadly that Faulkner "implicitly or explicitly adopted and implemented a careless and reckless policy, custom, or practice of allowing employees of the Franklin Police Department to present false information to the Williamson County Grand Jury." (Compl. ¶ 43.) She also alleges that the City's failure to adequately train police officers amounts to deliberate indifference to the plaintiff's constitutional rights.

These allegations amount to no more than rank speculation: the Franklin police officer defendants presented false testimony to the grand jury; the officers are under Faulkner's supervision; Faulkner must therefore have adopted a policy of allowing the police officers to present false testimony or failed to adequately train the officers so that they would not present false testimony. The plaintiff does not identify an actual policy or custom, and she does not allege that the City was on notice that its course of training was deficient. *See Connic v. Thompson*, 563 U.S. 51, 62 (2011) ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). To state a colorable claim, the Complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, these allegations amount to "[t]hreadbare recitals of the elements of a cause of action" devoid of "factual content that [would allow] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Because the Complaint's allegations fail to state a plausible claim for relief, the policy claims against the City of Franklin and Faulkner in her official capacity are subject to dismissal under *Iqbal* and *Twombly*.

C.      **State Law Claims**

The plaintiff responds only to the Franklin defendants' motion to dismiss her negligence and conspiracy claims. The state law claims rely upon the same facts as the federal claims and are subject to dismissal for the same reasons: the factual allegations simply do not support the claims.

**V.      Conclusion**

For the reasons set forth herein, the court will grant both Motions to Dismiss (Doc.

Nos. 20, 22). An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge